UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Watkins, Inc.,

       Plaintiff,

v.

Chilkoot Distributing, Inc., a
foreign corporation, Cecile Willick,
Lili J. Willick, and Richard Willick,

       Defendants.

**MEMORANDUM OPINION AND ORDER**
Civil No. 09-1115 ADM/FLN

_____

Alain M. Baudry, Esq., and Dawn C. Van Tassel, Esq., Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, on behalf of Plaintiff.

Bridget A. Sullivan, Esq., Gurstel Chargo, P.A., Golden Valley, MN, on behalf of Defendants.
_____

## I. INTRODUCTION

On July 13, 2010, the undersigned United States District Judge heard oral argument on Plaintiff Watkins, Inc.'s ("Watkins") Motion for Summary Judgment [Docket No. 14] and Defendants Chilkoot Distributing, Inc., Cecile Willick ("Cecile"), Lili J. Willick ("Lili"), and Richard Willick's (collectively "Defendants") Motion for Partial Summary Judgment [Docket No. 19]. For the reasons stated below, Watkins' summary judgment motion is granted and Defendants' partial summary judgment motion is denied.

## II. BACKGROUND[1]

Watkins is a Minnesota corporation with its principal place of business in Winona, Minnesota. Compl. ¶ 2 [Docket No. 1]. Watkins uses a network of independent sales associates

---

[1] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995). As both parties have moved for summary judgment, any disputed facts are noted.

to sell its personal care, household, and organic products.  Id. ¶ 8.  Defendants are Canadian citizens who have distributed Watkins products in eastern Canada for more than twenty years. Id. ¶¶ 3-4.

On July 21, 1988, Cecile and her daughter-in-law Lili signed a "Dealer Agreement" (the "1988 Agreement") with Watkins which provided that each of them was "a wholly independent marketing representative who establishes and services retail accounts for the products of Watkins Incorporated."  Cecile Willick Aff. [Docket No. 23], Ex. A.  The 1988 Agreement is silent regarding methods of compensation or commission rates; these are governed by Watkins' code of ethics and rules of conduct.  In 1993, Lili formed Defendant Chilkoot Distributing, Inc., to operate her Watkins' sales business.  Answer and Counterclaim [Docket No. 5] ¶ 13. Under the compensation scheme in effect at the time Defendants entered the 1988 Agreement, Watkins' associates were to be compensated from their own sales of Watkins' products and from the sales of Watkins' products in an associate's "downline."[2]  Van Tassel Aff. [Docket No. 17], Ex. C (Watkins Representative Reference Guide).

The Willicks expended considerable resources to develop their business in eastern Canada and became quite successful.  Answer and Counterclaim ¶ 62.  In 1990, the Willicks sponsored Paul Darveau ("Darveau"); Darveau and his downline associates sold large volumes of Watkins' insect repellent and the Willicks earned commissions on these downline sales.  See id. ¶ 70.  In 2000, the Willicks sponsored an organization called the Lambert Group and likewise, earned commissions on these downline sales.  Id.  In 2005, Cecile facilitated the sale of

---

[2] The term "downline" refers to the representatives an associate sponsors into the business, including everyone the representatives sponsor.  Ex. C at 38.

Darveau's business to the Lambert Group which eventually sold its business to an entity called Les Distribution du Rêve ("Les Distribution"). Id. ¶¶ 72, 73; Pl.'s Mem. in Supp. of Mot. for Summ. J. [Docket No. 16] at 4. Over the next few years, Les Distribution made significant sales and the Willicks continued to receive commissions on eligible sales. Answer and Counterclaim ¶ 74.

In April 2006, in an effort to update its records database after a flood, Pl.'s Resp. to Defs.' Mot. for Summ. J. [Docket No. 25] at 3, Watkins contacted many of its Canadian sales associates requesting that they provide a copy of their original contract or, in the alternative, complete "the enclosed International Associate Agreement" (the "2006 Agreement"). Willick Aff., Ex. A; Reply to Counterclaim [Docket No. 9] ¶ 8. Defendants admit they signed and faxed the 2006 Agreement to Watkins in July, 2006, but state that they believed the documents were simply "updat[ing] their personal contact information for [Watkins'] records," and did not sign with an understanding that it was "for the purposes of the adoption of new terms and conditions." Answer and Counterclaim ¶ 67. The 2006 Agreement included the following clause that was not in the 1988 Agreement:

> 4. I have had the opportunity to read and agree to comply with Watkins Corporate Policies & Procedures, all of which are incorporated into and made a part of these Terms and Conditions. I understand that I must be in good standing, and not in violation of any of the terms of this agreement, in order to be eligible to receive any income or bonuses from Watkins. I understand that these Terms and Conditions, and Watkins Corporate Policies & Procedures, may be amended from time to time, and I agree that any such amendment will apply to me. The continuation of my Watkins active status or my acceptance of income or bonuses shall constitute my acceptance of any and all amendments.

Compl., Ex. A (2006 Agreement).

As part of its expansion strategy, Les Distribution sold insect repellent to distributors, chain stores, and mass-merchant retail outlets in Quebec. Compl. ¶ 27. Its volume of sales made Les Distribution eligible for larger discounts on its sales. Id. ¶ 28. Because Watkins was discounting its products to Les Distribution and paying commissions on eligible sales to Defendants and those individuals in Defendants' "upline," the arrangement became financially untenable for Watkins. Id. ¶¶ 29-31. After failed negotiations between the parties regarding a compensation structure that would be more profitable for Watkins, in January, 2009, Watkins changed Les Distribution's status from "Associate" to "Manufacturer's Representative" precluding Defendants from receiving commissions on Les Distribution's future sales. Id. ¶ 36. Watkins sent Defendants a letter stating that they would continue to pay Defendants one-half of the commissions on Les Distribution's eligible sales in 2009, but that such payments would cease at the end of the year. Id. ¶ 41. Defendants continued to operate as Watkins Associates and accepted commissions on Les Distribution's direct sales after January, 2009.

In May, 2009, Defendants' counsel sent Watkins a letter alleging breach of contract, good faith, and fiduciary obligations. Id., Ex. D. In response, Watkins filed this action in Minnesota seeking a declaration that Defendants' claims are without merit. Compl. Defendants answered and asserted their counterclaims. Watkins moves for summary judgment on its declaratory judgment claim that the 2006 Agreement has not been breached and seeks dismissal of Defendants' counterclaims. Defendants cross move for summary judgment on their breach of contract claim.

## III. DISCUSSION

### A. Standard of Review

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall issue "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Watkins' Claim for Declaratory Judgment

Defendants strenuously argue that the letter which accompanied the 2006 Agreement merely requests updated contact information, and that by signing the 2006 Agreement, they did not intend to form a new contract. Watkins responds that a party is not permitted to avoid a contract on the ground that he or she did not read the document or misunderstood its terms.

Watkins' argument is supported by the case law. In Minnesota, the general rule is that "[i]n the absence of fraud or misrepresentation, a person who signs a contract may not avoid it on the ground that he did not read it or thought its terms to be different." Gartner v. Eikill, 319 N.W.2d 397, 398 (Minn. 1982). Defendants have not alleged any claim of fraud or misrepresentation upon which to revoke the 2006 Agreement. They wish to avoid the general

rule by stating that they "did not know they were executing a new contract." Defs.' Mem. in Resp. to Pl.'s Mot. for Summ. J. [Docket No. 28] at 13.

Defendants' argument is unpersuasive. By their own admission, Defendants are extremely successful and "sophisticated business people." Id. Despite their business savvy, Defendants signed a document, without reading it, which provides above the signature line:

> 4. AUTHORIZATIONS
>
> By signing below, I am applying to become a Watkins Associate.
> I have carefully read the terms and conditions on the back of this application and agree to abide by them.

By doing so, Defendants unequivocally and objectively expressed an intent to enter into a binding contract. See Winthrop Res. Corp. v. Sabert Corp., 567 F. Supp. 2d 1084, 1091 (D. Minn. 2008) ("When the parties' agreement has been reduced to an unambiguous, integrated writing, their intent must be determined from the language of the written contract alone."). The Defendants' claim that they neither read nor understood the 2006 Agreement cannot insulate them from the obligations incurred as a result of signing the document. Johnson v. Hubbard Broadcasting, Inc., 940 F. Supp. 1447, 1454 (D. Minn. 1996) ("A party . . . signs a contract at its own peril. Failing to read or understand the language of a contract serves as no defense under the law.") (citing N & D Fashions, Inc. v. DHJ Indus., Inc., 548 F.2d 722, 727 (8th Cir. 1976)).[3]

---

[3] See also, 17 Am. Jur. 2d Contracts § 210 stating in relevant part:

> People are free to sign legal documents without reading them, but the documents are binding whether read or not. The failure to read a document before signing it does not enable one to ignore the obligations imposed by that document on the ground that they did not read the contract or that the contents of the contract were not known to the party.

The fact that the contract represents a bad deal for Defendants does not excuse their performance. Winthrop Res., 567 F. Supp. 2d at 1092.

Defendants next argue that insufficient consideration renders the 2006 Agreement unenforceable. Specifically, Defendants contend that since they were operating under the 1988 Agreement and were able to order Watkins' products, the 2006 Agreement provided nothing of additional value to them. However, the rule in Minnesota is that "'[p]arties can alter their contract by mutual consent, and this requires no new consideration, for it is merely the substitution of a new contract for the old one, and this is of itself a sufficient consideration for the new.'" Olson v. Penkert, 90 N.W.2d 193 (Minn. 1958) (quoting Wilson v. Hayes, 42 N.W. 467, 471 (Minn. 1889)). The 2006 Agreement merely substitutes the 1988 Agreement, and thus no additional consideration is required.

Finally, Defendants argue the 2006 Agreement is invalid because Watkins has not proffered evidence to show that the 2006 Agreement signed by the Defendants included the back page containing the disputed terms. However, as previously noted, the text above the signature line reads "I have carefully read the terms and conditions on the back of this application and agree to abide by them." If Defendants did not read the terms and conditions on the back page, they should not have agreed to abide by them. Chicago Pac. Corp. v. Canada Life Assurance Co., 850 F.2d 334, 338 (7th Cir. 1988) (concluding that whether a party received a copy of a specific document, incorporated by reference in a contract signed by that party, is "irrelevant" because "if it had not received the document, it should not have promised to comply with its terms."). Therefore, Defendants' contention fails.

**C. Defendants' Counterclaims**

  **1. Breach of Contract**

Defendants move for summary judgment on their claim that Watkins breached the 1988 Agreement when it ceased paying Defendants commissions on Les Distribution's eligible sales. Watkins responds that the 2006 Agreement is the operative contract, thus the 1988 Agreement is void.

As discussed above, it is undisputed that Defendants signed the 2006 Agreement which included the following merger clause:

> This Agreement constitutes the entire contract between Watkins and myself. Any promises, representations, offers, or other communications not expressly set forth in this Agreement are of no force or effect. To the extent of any conflict or inconsistency between this Agreement and any other agreement (other than Watkins Corporate Policies & Associate Responsibilities), this Associate Agreement shall supersede and prevail over any term of any other agreement as to the matters addressed herein. To the extent of any conflict or inconsistency between this Agreement and Watkins Corporate Policies & Procedures, Watkins Corporate Policies & Procedures shall in all instances supersede and prevail over any term of this Agreement.

2006 Agreement.

The merger provision is broad and unambiguous and explicitly states that it "shall supersede and prevail over any term of any other agreement[.]" Therefore, the plain language of the merger provision expresses an intent to discharge prior agreements, and Watkins is entitled to enforce the 2006 Agreement. See Stromberg v. Smith, 423 N.W.2d 107, 109 (Minn. Ct. App. 1988) ("[I]f a contract is a complete integration of the parties' agreements, prior agreements *within the scope of the contract* are discharged regardless of consistency.") (citing Restatement

(Second) of Contracts § 213 (1981)). Because the 2006 Agreement supersedes the 1988 Agreement, Watkins could not, as a matter of law, have breached the 1988 Agreement. Thus, Defendants' motion for summary judgment on its breach of contract claim is denied.

### 2. Equitable Claims

Defendants' counterclaim seeks relief under the theories of unjust enrichment, quantum meruit, and promissory estoppel arising from Watkins' retention of commissions allegedly due to Defendants. Watkins argues that Defendants' equitable claims should be dismissed because the contractual nature of the case precludes equitable relief under Minnesota law.

In Minnesota, parties to an express contract are entitled to have their rights and duties adjudicated exclusively by its terms. Sports & Travel Mktg., Inc. v. Chicago Cutlery Co., 811 F. Supp. 1372, 1378 (D. Minn. 1993). Equitable relief cannot be granted where the rights of the parties are governed by a valid contract. United States Fire Ins. Co. v. Minnesota State Zoological Bd., 307 N.W.2d 490, 497 (Minn. 1981). The existence of a valid contract between the parties, in this case the 2006 Agreement, precludes recovery under the theories of unjust enrichment, quantum meruit, and promissory estoppel. Sharp v. Laubersheimer, 347 N.W.2d 268, 271 (Minn. 1984) (stating that compensation under unjust enrichment theory is contrary to law where there is an express contract); Breza v. Thaldorf, 149 N.W.2d 276, 279 (Minn. 1967) (precluding recovery in quantum meruit where there is proof of an express contract); Ruud v. Great Plains Supply, 526 N.W.2d 369, 372 (Minn. 1995) (promissory estoppel only applicable where no actual contract exists). Accordingly, Defendants' equitable counterclaims are dismissed.

**3. Interference with Business Expectancy**

Watkins seeks dismissal of Defendants' counterclaim on interference with business expectancy. Minnesota recognizes only two tortious-interference claims: "1) tortious interference with an existing contract; or (2) tortious interference with a prospective business relation or, as it is sometimes referred to, a prospective economic advantage." Hern v. Bankers Life Cas. Co., 133 F. Supp. 2d 1130, 1137 (D. Minn. 2001). Watkins argues that the tort of interference with business expectancy is not recognized by Minnesota courts. A review of the case law suggests that there appears to be some question about whether Minnesota recognizes such a claim. See Harbor Broad., Inc. v. Boundary Waters Broads., Inc., 636 N.W.2d 560, 569 n.4 (Minn. Ct. App. 2001); Benefit Res., Inc. v. Apprize Tech. Solutions, Inc., Civ No. 07-4199, 2008 WL 2080977, at *10 n.6 (D. Minn. May 15, 2008); St. Croix Printing Equip. v. Sexton, Civ. No. 06-4273, 2008 WL 3412090, at *3 n.2 (D. Minn. Aug. 8, 2008). However, in their responsive brief, Defendants do not address Watkins' assertion. Because it is unclear whether the claim as pled is recognized as a valid ground for relief in Minnesota, and Defendants have made no effort to argue that the specific claim is a recognized cause of action in Minnesota or recast the claim as one for tortious interference with an existing contract or tortious interference with a prospective business relation, the claim for interference with business expectancy is dismissed.

**4. Reformation of Contract**

Defendants seek relief in the form of reformation of the written agreement. Before a court of equity will interfere to reform a written agreement, it must appear that (1) there was a valid agreement sufficiently expressing in terms the real intention of the parties, (2) there was a

written contract that failed to express such true intention, and (3) this failure was due to mutual mistake of the parties or unilateral mistake by one party accompanied by fraud or inequitable conduct by the other party. Theisen's, Inc. v. Red Owl Stores, Inc., 243 N.W.2d 145, 148 (Minn. 1976). Here, Defendants do not plead or argue unilateral mistake and instead rely solely on the ground of mutual mistake. A party seeking reformation of a contract on the ground of mutual mistake bears a heavy burden. Id. Evidence relied upon to reform a contract because of mutual mistake must be "clear, unequivocal, and convincing." Golden Valley Shopping Ctr. Inc. v. SuperValue Realty, Inc., 98 N.W.2d 55, 58 (Minn. 1959).

Defendants contend that the 2006 Agreement fails to reflect the true intent and understanding of the parties. However, Watkins asserts that they were not mistaken regarding the terms of the 2006 Agreement. Thus, if there was any mistake or misunderstanding in the inception and execution of the 2006 Agreement, it was a unilateral one of Defendants and not a *mutual* mistake in any way. Thus, dismissal of Defendants' reformation claim is also appropriate.

## IV. CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that:

1. Plaintiff's Motion for Summary Judgment [Docket No. 14] is **GRANTED**;

2. Defendants' Motion for Summary Judgment [Docket No. 19] is **DENIED**;

3. Defendants' counterclaims are **DISMISSED**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


       s/Ann D. Montgomery       
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated: August 31, 2010.