# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

Watkins, Inc.,

                Plaintiff,                  **MEMORANDUM OPINION AND ORDER**

      v.                                    Civil No. 09-1115 ADM/FLN

Chilkoot Distributing Inc., a
foreign corporation, Cecile Willick,
Lili J. Willick, and Richard Willick,

                Defendants.

---

Dawn C. Van Tassel, Esq., and Alain M. Baudry, Esq., Maslon Edelman Borman & Brand, LLP, Minneapolis, MN, on behalf of Plaintiff.

Bridget A. Sullivan, Esq., Gurstel Chargo, P.A., Golden Valley, MN, and Kay Nord Hunt, Esq., Lommen, Abdo, Cole, King & Stageberg, PA, Minneapolis, MN, on behalf of Defendants.

---

## I. INTRODUCTION

On October 11, 2011, the undersigned United States District Judge heard oral argument on Plaintiff Watkins, Inc.'s ("Watkins") Renewed Motion for Summary Judgment [Docket No. 58].[1] Defendants Chilkoot Distributing, Inc., Cecile Willick ("Cecile"), Lili J. Willick ("Lili"), and Richard Willick (collectively "Defendants") oppose the motion. For the reasons stated below, Watkins' Renewed Motion for Summary Judgment is granted.

---

[1] Watkins' original Motion for Summary Judgment [Docket No. 14] was heard on July 13, 2010. This Court granted summary judgment in favor of Watkins, and that decision was reversed and remanded from the United States Court of Appeals for the Eighth Circuit on September 13, 2011. Watkins Inc. v. Chilkoot Dist., Inc., No. 10-3127, 2011 U.S. App. LEXIS 18858, at *11. That decision determined only the threshold issue of which contract applied, "express[ing] no opinion as to the other holdings in [this] district court's summary judgment order." Id. Neither Watkins nor Defendants filed new briefs for this hearing, instead resting on their previously filed arguments.

## II.  BACKGROUND[2]

Watkins, a Minnesota corporation with its principal place of business in Winona, Minnesota, employs a network of independent sales associates to sell its personal care, household, and organic products.  Compl. [Docket No. 1] ¶¶ 2, 8.  Independent marketing representatives, or associates, earn commissions both on their own direct sales and on those of the associates they have sponsored, called their "downline" associates.  Compl. Ex. C ("Watkins Representative Reference Guide").  Defendants are Canadian citizens who have distributed Watkins products in eastern Canada since 1988.  Id. ¶¶ 3–4.  On July 21, 1988, Cecile and her daughter-in-law Lili signed a "Dealer Agreement" (the "1988 Dealer Agreement") with Watkins, providing that each of them was a "wholly independent marketing representative who establishes and services retail accounts for the products of Watkins Incorporated."  C. Willick Aff. [Docket No. 23] Ex. A.  The 1988 Agreement does not mention methods of compensation or commission rates; rather, these are governed by Watkins' code of ethics and rules of conduct, which can be unilaterally revised or updated by Watkins at any time.  Willick Aff. Ex. D ("Corporate Policies & Procedures") at 21.  In 1993, Lili formed Defendant Chilkoot Distributing, Inc., to operate her Watkins' sales business.   Am. Answer & Countercl. [Docket No. 7] ¶ 13.

In 1990, the Willicks sponsored Paul Darveau, who along with his downline associates established a market for large volumes of Watkins' insect repellent.  Id. ¶ 70.  In 2000, the Willicks also sponsored an organization called the Lambert Group.  Id. ¶ 71.  The Willicks earned commissions on all of the sales of these downline associates.  Cecile facilitated the sale of

---

[2] On a motion for summary judgment, the Court views the evidence in the light most favorable to the nonmoving party.  Ludwig v. Anderson, 54 F.3d 465, 470 (8th Cir. 1995).

Darveau's business to the Lambert Group in 2005, who later that year sold its business to Les Distribution du Rêve ("Les Distribution"). Id. ¶¶ 72–73; Pl.'s Mem. in Supp. of Mot. For Summ. J. [Docket No. 16] at 4. Throughout these business transactions, the Willicks continued to receive commissions on the product sales of their downline associates, including Les Distribution. Am. Answer & Countercl. ¶ 74–75.

In April 2006, to update its records database after a flood destroyed several original Associate Agreements in Watkins' Canadian headquarters, Watkins contacted many of its Canadian sales associates requesting that they provide a copy of their original contract or, in the alternative, complete "the enclosed International Associate Agreement" (the "2006 Agreement"). Willick Aff. Ex. A; Reply to Countercl. [Docket No. 9] ¶ 8; Decl. of Odette Dudych [Docket No. 35] ¶ 8. Defendants admit they signed and faxed the Agreement to Watkins in July 2006, but state they believed the documents were simply providing Watkins with "up-to-date and accurate data for its records," and that they did not sign the documents "for the adoption of new terms and conditions." Am. Answer & Countercl. ¶ 67.

Les Distribution sold insect repellent to distributors, chain stores, and retail outlets in Quebec. Compl. ¶ 27. Watkins became concerned about the commissions it was paying both Les Distribution and Defendants, and in January 2009 Watkins changed Les Distribution's status from "Associate" to "Manufacturer's Representative." Id. ¶ 29–31, 36. Watkins claims Les Distribution was "not interested in operating a direct selling business" but rather had been engaging in the selling of products "through brokers, distributors and retail chains," prohibited by Watkins Policies and Procedures. Willick Aff. Ex. O ("January Letter"). This change of status precluded Defendants from receiving commissions on Les Distribution's future sales.

3

Compl. ¶ 36.  Watkins sent Defendants a letter stating Defendants would receive one-half of the commission on Les Distribution's eligible sales in 2009, but that such payments would discontinue at the end of that year.  Id. ¶ 41; January Letter.  Defendants continued to operate as Watkins associates, receiving commissions from downline associates and accepting reduced commissions on Les Distribution's direct sales after January 2009.

Defendants sent Watkins a letter in May 2009 alleging breaches of contract, good faith, and fiduciary obligations.  Compl. Ex. D.  Watkins responded by filing this declaratory action in Minnesota, and Defendants answered and asserted their Counterclaims.

On July 13, 2010, the undersigned Judge heard arguments on Watkins' motion for summary judgment and dismissal of counterclaims, as well as Defendants' cross-motion on their breach of contract claim.  This Court granted Watkins' summary judgment motion, denied Defendants' cross-motion, and dismissed Defendants' counterclaims.  On September 13, 2011, the United States Court of Appeals for the Eighth Circuit remanded and reversed the granting of Watkins' summary judgment motion, finding that a reasonable factfinder could disagree as to whether the 1988 or 2006 agreements controlled.  Watkins, 2011 U.S. App. LEXIS 18858, at *11.  Watkins renews its motion for summary judgment on the ground that no cause of action exists, whichever contract applies.

### III.  DISCUSSION

#### A.  Standard of Review

Summary judgment shall be granted if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); see Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).  On a motion for summary

judgment, the evidence is viewed in the light most favorable to the nonmoving party. Ludwig, 54 F.3d at 470. The nonmoving party may not "rest on mere allegations or denials, but must demonstrate on the record the existence of specific facts which create a genuine issue for trial." Krenik v. County of Le Sueur, 47 F.3d 953, 957 (8th Cir. 1995).

### B. Watkins' Renewed Summary Judgment Motion on its Claim for Declaratory Judgment

Watkins argues that whether the 1988 or 2006 Agreement applies, it has not breached either contract by changing Les Distribution's status and is entitled to a declaratory judgment in its favor. Defendants contend that they never meant to form a new contract in 2006, that the 1988 Agreement governs, and that a genuine issue of material fact exists and Watkins is not entitled to judgment as a matter of law.

#### i. Unclear Which Contract Applies

The United States Court of Appeals for the Eighth Circuit found there is a threshold factual issue of whether the parties intended for the 2006 Agreement to supersede the 1988 Agreement. Watkins, 2011 U.S. App. LEXIS 18858, at *11. The existence and terms of a contract are generally questions of fact to be determined by the jury when those issues are in doubt. Morrisette v. Harrison Int'l Corp., 486 N.W.2d 424, 427 (Minn. 1992). The parties' intent, adjudged objectively rather than subjectively, determines whether a contract has been formed. Cederstrand v. Lutheran Bhd., 117 N.W.2d 213, 221 (Minn. 1962).

Watkins' argument that the Defendants intended to enter into the 2006 Agreement is not supported by sufficient facts. A reasonable factfinder could determine that given the parties' longstanding relationship, preexisting contract, various phone calls and letters, as well as the language of the 2006 Agreement itself, Defendants and Watkins did not intend to enter into a

new contract when Defendants returned the signed form to Watkins. Neither party disputes the validity of the 1988 Agreement, so if the 2006 Agreement was not properly formed the 1988 one controls. Therefore, Defendants' breach of contract claim must be analyzed under both the 1988 and 2006 Agreements.

### a. 1998 Agreement

The 1988 Agreement requires that dealers "[a]bide by and adhere to the Watkins 'Code of Ethics' and 'Rules of Conduct' both in letter and in spirit." 1988 Dealer Agreement § 2(d). The 1988 Agreement also specifies that the agreement can only be terminated by one of the following: (a) mutual written cancellation by the parties; (b) a dealer's written notice; or (c) dealer's "failure to comply with the conditions of this agreement" or other conduct in contravention of the Code of Ethics or Rules of Conduct. Id. § 6(a–c). The Rules of Conduct prohibit selling Watkins products at self service retail locations. Corporate Policies & Procedures at 21, § 9 ("Watkins products may not be displayed or sold in self service retail locations."). The Rules of Conduct also prohibit Watkins representatives from "solicit[ing] other Watkins Representatives to change their line of sponsorship." Id. § 3. The Corporate Policies and Procedures expressly state that "Watkins reserves the right to revise or update Corporate Policies at any time." Corporate Policies & Procedures at 21. Nothing in the 1988 Agreement or the incorporated Rules of Conduct or Code of Ethics prohibit Watkins from changing the status of a representative or taking action when a representative has failed to comply with the terms of the agreement.

### b. 2006 Agreement

Under the 2006 Agreement, any waiver by Watkins "of any breach of this Agreement must be in writing and signed by an authorized officer of Watkins," and such waiver "shall not operate or be construed as a waiver of any subsequent breach." Compl. [Docket No. 1] Ex. A ("2006 International Associate Agreement") § 10. The 2006 Agreement also specifies that associates "must be in good standing, and not in violation of any of the terms of this agreement, in order to be eligible to receive any income or bonuses from Watkins." Id. § 4. Both the 2006 International Associate Agreement and the Corporate Policies and Procedures expressly state that they may be amended and that those amendments will apply to associates. Id.; Compl. Ex. C ("Representative Reference Guide") at 21. Watkins associates are prohibited from selling Watkins' products at self service retail locations under the Corporate Policies and Procedures. Representative Reference Guide at 21, § 9. The Corporate Policies and Procedures also prohibit Watkins representatives from "solicit[ing] other Watkins Representatives to change their line of sponsorship." Id. at 21, § 3. The 2006 Agreement, as well as the incorporated Corporate Policies and Procedures, do not prohibit Watkins from changing a representative's status or from taking action when a representative has failed to comply with the terms of the agreement.

### ii. There is No Genuine Issue of Material Fact and Watkins is Entitled to Judgment as a Matter of Law

### a. Breach of Contract

In Minnesota, a breach of contract claim requires the nonbreaching party to allege the following four elements: (1) existence of a contract; (2) its performance of conditions precedent; (3) a material breach by the other party; and (4) resulting damages. Parkhill v. Minn. Mut. Life Ins. Co., 174 F. Supp. 2d 951, 961 (D. Minn. 2000). The interpretation, construction, and effect

of a contract is a question of law for the court, only becoming a question of fact for the jury if an ambiguity exists. Turner v. Alpha Phi Sorority House, 276 N.W.2d 63, 66 (Minn. 1979).

Regardless of whether the 1988 or 2006 Agreement applies, Defendants have failed to establish how Watkins breached a contractual provision. Because neither party claims either contract includes ambiguous terms, the construction and interpretation of the Agreements are matters of law. Defendants admit that associates can be terminated for failure to comply with the Corporate Policies and Procedures. Van Tassel Aff. [Docket No. 17] Ex. A ("C. Willick Deposition") 89:9-12. Defendants allege that Watkins breached the 1988 agreement by their failure "to pay the Willicks their full bonuses on [Les Distribution's] sales in 2009 and . . . to make any bonus payments to the Willicks in 2010 for [Les Distribution's] sales." Defs.' Mem. in Supp. of Mot. For Summ. J. [Docket No. 21] 19. Additionally, Defendants admit that they have continued to receive commissions on their downline associates, including those who previously belonged to Les Distribution. C. Willick Dep. 56:1-19, 61:7-14.

No provision in either the 1988 Agreement or the 2006 Agreement prohibited Watkins from changing the status of an Associate to Manufacturer's Representative. Watkins' action did not alter or breach its contractual agreements with an upline dealer such as Defendants, as no contract provision guarantees permanence of downline associates. Both the 1988 Agreement and the 2006 Agreement gave Watkins the right to terminate an associate for failure to comply with the contractual terms, such as selling at self service retail locations. Corporate Policies & Procedures at 21, § 9; Representative Reference Guide at 21, § 9. Both agreements forbade Watkins representatives from soliciting downline associates to change their sponsorship. Corporate Policies & Procedures 21, § 3; Representative Reference Guide at 21, § 3. However, neither of the 1988 and 2006 Agreements prohibit Watkins from changing a downline associate's

designation. Under either agreement, then, Watkins had the right to change the status of an associate who was in violation of an express contractual term. When Watkins changed the status of Les Distribution because of its ongoing violation of Watkins' prohibition on self service retail sales, Watkins' conduct did not breach either the 1988 or the 2006 Agreement. There is no genuine issue of fact, since Defendants have failed to allege any way in which Watkins breached the contract through its actions regarding a third party. Watkins is entitled to judgment as a matter of law because its actions were lawful under either contract.

### b. Defendants' Equitable Counterclaims, Interference with Business Expectancy Counterclaim, & Reformation of Contract Counterclaim

Defendants' counterclaims of unjust enrichment, quantum meruit, and promissory estoppel were dismissed in this Court's previous decision because the contractual nature of the case precluded equitable relief under Minnesota law. Watkins v. Chilkoot Distrib., Inc., Civ. No. 09-1115, 2010 U.S. Dist. LEXIS 90902, at *12–14 (D. Minn. Aug. 31, 2010). Given that either the 1988 or 2006 Agreement must govern the business relationship between Defendants and Watkins, the United States Court of Appeals for the Eighth Circuit's reversal on the question of which contract applies did not disturb the dismissal of these quasi-contractual claims. See Watkins, 2011 U.S. App. LEXIS 18858, at *11.

Defendants' counterclaim on interference with business expectancy was previously dismissed because Minnesota law does not recognize such a cause of action and Defendants failed to restate the claim as a recognized cause of action such as tortious interference with an existing contract or tortious interference with a prospective business relation. Watkins, 2010 U.S. Dist. LEXIS 90902, at *14–15. The reformation of contract relief that Defendants sought was also previously dismissed by this Court for Defendants' failure to provide any evidence of

mutual mistake.  Id. at *15.

The United States Court of Appeals for the Eighth Circuit decided only the threshold issue of which contract applied, "express[ing] no opinion as to the other holdings in [this] district court's summary judgment order."  Watkins, 2011 U.S. App. LEXIS 18858, at *11.  Therefore, for the reasons previously stated, all Defendants' counterclaims remain dismissed.

### IV.  CONCLUSION

Based upon the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY ORDERED** that Watkins' Motion for Summary Judgment [Docket No. 58] is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

BY THE COURT:


　　　　s/Ann D. Montgomery　　　　
ANN D. MONTGOMERY
U.S. DISTRICT JUDGE

Dated:  October 20, 2011.